**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 01-10425
_____

JOE LEE GUY,

Petitioner - Appellant,

versus

JANIE COCKRELL, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(5:00-CV-191)

_____

July 23, 2002

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant, Joe Lee Guy ("Guy"), seeks a certificate of appealability ("COA") to appeal the dismissal of his 28 U.S.C. § 2254 application. For the reasons hereafter explained, we grant COA on Guy's conflict of interest claim only.

FACTUAL AND PROCEDURAL HISTORY

[*]Pursuant to CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstance set forth in 5th CIR. R. 47.5.4.

In early 1993, Thomas Howard ("Howard") and Richard Springer ("Springer") approached Guy with a plan to rob the Howell Grocery Store, which was owned and operated by Larry Howell ("Larry") and his elderly mother, French Howell ("French"). The plan included murdering Larry, French, and any other potential witnesses. Guy agreed to assist with the robbery. On March 25, 1993, at around 9:00 p.m., Howard and Springer entered the store wearing ski masks, while Guy kept watch outside the front door. As planned, after hearing gun shots, Guy entered the store to help get money out of the cash register, but when he attempted to do so, the cash register would not open. Springer grabbed the register and carried it outside; it was found across the street from the store with approximately $10,000 inside of it. At around 9:45 p.m., French, having survived the shooting, called 911. When the police arrived at the scene, Larry was lying on the floor–shot once in the forehead and four times in the chest and back. Larry died shortly after arriving at the hospital. Although French survived, she could not identify her assailants. Guy, Howard, and Springer were later apprehended and charged with murdering Larry in the course of a robbery.

At trial, the Government produced an eye-witness who testified that he saw Guy standing outside of the store at the time the robbery took place. Another witness testified that she sold ski masks to Guy, Howard, and Springer, on March 23, 1993, two days before the robbery. The Government also presented evidence establishing that Guy's fingerprints were on the cash register found across the street from the store.

In April of 1994, Guy was convicted and sentenced to death.[2] On appeal, the Texas Court of Criminal Appeals affirmed Guy's conviction and sentence. Guy then filed a state habeas petition,

_____

[2]Guy, who was by far the least culpable of the three defendants, was the only defendant to receive the death penalty. Howard and Springer both received life sentences.

which was denied after an evidentiary hearing by the Texas Court of Criminal Appeals. On June 9, 2000, Guy filed a federal habeas petition, and the Government filed a motion for summary judgment. The district court granted the Government's motion, and denied all habeas relief. Thereafter, Guy filed a notice of appeal and an application for COA, which was denied the next day. Guy has now filed an application for COA in this Court.[3]

## STANDARD OF REVIEW

The standard for granting a COA is whether the petitioner has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (1994). To obtain a COA under § 2253(c), the petitioner does not have to prove that he will be successful on the merits; rather, he must make "a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). "Because the present case involves the death penalty, any doubts as to whether a COA should [be] issue[d] must be resolved in [the petitioner's] favor." Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir. 2000).

## DISCUSSION

In his application for a COA, Guy raises three issues: (1) whether his Sixth Amendment Right to Counsel was violated due to his legal team's conflict of interest; (2) whether his Sixth Amendment Right to Counsel was violated due to his trial counsel's drug and alcohol abuse during trial; and (3)

---

[3]The Government has expressly waived its right to contest Guy's failure to exhaust state remedies.

3

whether his Fourteenth Amendment right to due process was violated because the Government introduced fundamentally unreliable expert testimony regarding future dangerousness.[4]

I.      Conflict of Interest

In the district court, the parties disputed the appropriate standard to apply to Guy's conflict of interest claim. Guy maintained that the standard set out in Cuyler v. Sullivan, 446 U.S. 335 (1980), should have applied. Under Cuyler, a petitioner demonstrates ineffective assistance of counsel where there is an actual conflict of interest that adversely affected his lawyer's performance. To prevail under this standard, a petitioner does not have to show that he was prejudiced. Prejudice is presumed if the petitioner can establish that: (1) his counsel "actively represented conflicting interests," and (2) "an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348; see also Mickens v. Taylor, 122 S. Ct. 1237, 1242 (2002) (holding that to establish a Sixth Amendment violation where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known, "a defendant must demonstrate that [the] conflict of interest actually affected the adequacy of his representation." (internal quotation marks omitted)). We have determined, however, that the Cuyler standard only applies where the conflict arises from the attorney's representation of multiple individuals. Beets v. Scott, 65 F.3d 1258, 1272 (5th Cir. 1995). If such a situation does not exist, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), must be applied. Id. The district court properly found that Guy's claim did not arise from Wardroup's representation of Guy and another party, and therefore, it appropriately

_____

[4]Guy also argues that his trial counsel's, Richard Wardroup ("Wardroup"), performance during his appeal was ineffective because Wardroup filed numerous motions for extension before ultimately filing Guy's appellant brief. The district court properly found that even if the continuous filing of motions for extension to file an appellant brief did constitute deficient performance, Guy has failed to show how these actions prejudiced his case.

applied the Strickland standard in the instant case.

To prevail under Strickland, Guy must show that his attorney's performance fell below an objective standard of reasonableness and that the performance prejudiced the defense, undermining the reliability of the proceeding. Strickland, 466 U.S. at 687. Guy argues that Frank SoRelle ("SoRelle"), who was an employee of Wardroup and was appointed as Guy's investigator, had a conflict of interest. Specifically, he maintains that, instead of investigating Guy's case and obtaining possible mitigating evidence, SoRelle spent his time currying favor with French, in order to inherit her estate. Guy contends that SoRelle was representing the interests of French at the same time Wardroup was representing Guy. He reasons that SoRelle was Wardroup's agent, and as both the attorney who had ultimate responsibility for Guy's defense, and as SoRelle's principal, Wardroup was responsible for his agent's actions–particularly, since Wardroup knew about SoRelle's relationship with French.

In an affidavit submitted by SoRelle, he admitted that he "now knows that [his] compassion for and the relationship that [he] developed with French created a conflict of interest." SoRelle also conceded that the "conflict at times caused [him] to conduct [his] investigation in a way that was damaging to Joe Lee Guy getting a proper defense." The record further reveals that SoRelle referred French to an attorney to prepare her will and paid for the drafting of a will that left French's estate to SoRelle. SoRelle inherited French's estate in 1996.

In spite of SoRelle's admissions, the district court determined that "Guy failed to prove that the compassion SoRelle developed for Mrs. Howell caused him to alter or disregard his investigation and therefore prejudiced Guy's defense." Although the district court acknowledged that SoRelle did admit that he had developed compassion for French, which created a conflict, it found that "there is

5

no credible evidence to prove that SoRelle ever affirmatively worked, during pretrial investigation or during trial, to undermine Guy's defense in an effort to obtain or inherit the estate of Ms. Howell." We disagree with this determination.

A review of the record evidences that SoRelle was laboring under a clear conflict of interest that, at the very least, could have adversely affected Guy's defense, thereby contributing to his conviction. The most telling evidence that the conflict of interest adversely affected Guy's defense is SoRelle's own admission that he had developed compassion for French, which caused him to alter or disregard his investigation of Guy's case. SoRelle not only investigated Guy's case, he also assisted in the preparation of the motions in Guy's defense. Further, the fact that SoRelle became the named beneficiary of French's will, only six months after Guy's conviction also raises concerns. Whether or not SoRelle's actions were sufficient to show that Wardroup was ineffective under Strickland is inconclusive at this point, but certainly "reasonable jurists could debate whether this issue is 'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 83-84. Therefore, Guy's request for a COA on this issue is granted.

II.     Incapacity of Counsel

Next, Guy contends that he was deprived of his Sixth Amendment right to a fair trial because, during his trial, Wardroup was in the throes of drug and alcohol addiction. Wardroup candidly admitted in several depositions that he had used drugs and alcohol in the past. He also conceded that he used drugs periodically through Guy's trial, but denied drinking any alcohol. This Court has noted that, "under Strickland the fact that an attorney used drugs is not, *in and of itself*, relevant to an ineffective assistance claim. The critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant." Berry v. King, 765

6

F.2d 451, 454 (5th Cir. 1985) (emphasis in the original).

Guy asserts that his trial counsel's performance was deficient for the following reasons: (1) counsel failed to supervise SoRelle and to investigate the case; (2) counsel failed to object to inadmissible hearsay evidence; (3) counsel failed to object to the insufficiency of the evidence to prove elements of the offense pled in the indictment; (4) counsel failed to object to the admission of evidence during the sentencing phase; (5) counsel failed to object to special punishment jury instructions; and (6) counsel failed to object to incomplete polling of the jury.

This Court has held that a conscious and informed decision on trial tactics and strategy cannot form the basis for a constitutionally ineffective assistance of counsel claim unless it is "so ill chosen that it permeates the entire trial with obvious unfairness." Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995). Guy has failed to show that any of the decisions made by his trial counsel were so ill chosen that they infested the trial with patent unfairness. Further, although Guy paints a dark picture of an attorney allegedly abusing drugs and alcohol during trial, he has failed to point to any specific instances where his trial counsel's performance was deficient because of drug or alcohol abuse, and none is apparent from the record. Therefore, Guy's claim must fail under Berry and his request for COA on this issue is denied.

III.    Expert Testimony

Lastly, Guy maintains that, during the sentencing phase of his trial, the Government violated his Fourteenth Amendment right to due process by introducing fundamentally unreliable expert testimony regarding future dangerousness. He claims that the witnesses' testimonies were unreliable since they were based on hypothetical questions without either of the witnesses having personally interviewed Guy or having reviewed psychological records or testimony. In Barefoot v. Estelle, the

7

Supreme Court found constitutional the admission of expert psychiatric predictions of future dangerousness even where the expert witness is testifying based on hypotheticals without ever having examined the defendant. 463 U.S. 880, 898-99 (1983). Thus, Guy's contention that the admission of such testimony, in and itself, violates of the Fourteenth Amendment must fail. Accordingly, his request for COA on this issue is denied.[5]

## CONCLUSION

For the reasons stated herein, we GRANT Guy a COA with regard to his conflict of interest claim; however, we find that none of the other claims set out in Guy's application warrant the granting of COA.

COA GRANTED in part.

---

[5]Although we have denied Guy a COA on this issue, Judge Emilio M. Garza remains critical of expert testimony on the future dangerousness of a defendant when it is given without conducting a psychiatric examination and/or psychological evaluation of the defendant, but rather is based only on the facts elicited at trial. See Flores v. Johnson, 210 F.3d 456, 458-70 (5th Cir. 2000).